IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DANIEL ZABOROWSKI, Individually and as Independent Administrator of the Estate of NICOLE HLADIK, Deceased, | Case No. 21-cv-03454 |
| Plaintiff, | Judge Mary M. Rowland |
| v. | |
| VILLAGE OF HINSDALE, ILLINOIS, a municipal corporation, and LIEUTENANT TOM MCCARTHY, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Daniel Zaborowski, individually and as the Independent Administrator of the Estate of Nicole Hladik, filed this suit against Defendants the Village of Hinsdale and Lieutenant Tom McCarthy bringing claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a) and the Fourteenth Amendment, as well as state law claims. For the reasons stated herein, Defendants' Partial Motion to Dismiss [9] is denied.

**I.  Background**

The following factual allegations are taken from the Amended Complaint (Dkt. 19)[1] and are accepted as true for the purposes of the motion to dismiss. *See W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

---

[1] Defendants initially moved to dismiss the original complaint (Dkt. 1), but the parties agree that the Amended Complaint (Dkt. 19) is now the operative complaint. *See* Dkt. 25 at 1.

1

Plaintiff Daniel Zaborowski is the husband and court-appointed administrator of the Estate of Nicole Hladik. Dkt. 19 ¶ 6. Nicole Hladik ("Hladik") was a firefighter in the Village of Hinsdale until her passing. Defendant Village of Hinsdale, Illinois ("Hinsdale") is a municipal corporation under the laws of the State of Illinois. *Id.* at ¶ 7. Defendant Tom McCarthy was employed as Lieutenant of the Hinsdale Fire Department at all relevant times. *Id.* at ¶ 9.

Hladik wanted to become a firefighter from an early age. *Id.* at ¶ 12. She trained at Western Springs Fire Department Training Academy, graduating with honors and second in her class. *Id.* at ¶ 14. On June 20, 2019, she received her certification from the State of Illinois as a firefighter. *Id.* at ¶ 15. The next month she was hired by the Hinsdale Fire Department as a full-time firefighter and paramedic on a probationary basis for one year. *Id.* at ¶ 16. To start her employment, Hladik attended Romeoville Fire Academy; she again graduated with honors and second in her class. *Id.* at ¶ 17. She was sworn in as a Hinsdale firefighter on September 17, 2019. *Id.* at ¶ 19. At that time, Hladik was only the third female firefighter in the department's over 100-year history. *Id.* at ¶ 20. During her entire employment, Hladik was the only female firefighter in the department. *Id.*

The Hinsdale Fire Department is divided into three shifts: Gold, Black and Red. *Id.* at ¶ 21. During her first six months, Hladik was assigned to the Gold division where she was supervised by Captain Mike Neville and Lieutenant Andy Ziemer. *Id.* at ¶ 23. During that time, Hladik regularly met and exceeded the legitimate expectations as a probationary firefighter, including earning a commendation during

2

this period. *Id.* at ¶ 24. Hladik was on track to satisfactorily complete her probation and become a permanent firefighter with the Fire Department. *Id.* At all times, Hladik exceeded all legitimate expectations required to be a firefighter in the department. *Id.* at ¶¶ 18, 37.

In January 2020, while still on probation, Hladik was re-assigned to the Black division and McCarthy became her supervisor. *Id.* at ¶ 25. Once there, Defendants engaged in a "systematic pattern of conduct to break Hladik and force her to quit" because of her sex. *Id.* at ¶ 26. Hladik experienced emotional torment, hostility, hazing, and abuse by Defendants. *Id.* at ¶ 27. Defendants also intentionally imposed unnecessary terms and conditions on her employment to prevent her from passing her probationary period. *Id.* at ¶ 28. This included public ridicule, interrogations about her knowledge of fire services, insults of her competency by McCarthy and being told to quit. *Id.* at ¶ 29. On at least one occasion, McCarthy forced Hladik to perform training tasks such as wearing a blindfold to operate a firehose in a simulated fire. Male firefighters were not subjected to similar treatment. *Id.* at ¶¶ 29–30. In the last two weeks of her probation, Defendants, without reason, placed Hladik on a Performance Improvement Plan designed to make her fail. *Id.* at ¶ 32.

Defendants' actions caused Hladik to believe she would fail and would not be able to become a permanent firefighter. *Id.* at ¶ 33. On July 20, 2020, Hladik told her husband that Defendants "ruined her life." *Id.* at ¶ 34. The next day, July 21, 2020, Hladik died by suicide. *Id.* at ¶ 35. Before she died, she wrote "work has destroyed me," "I cannot take one more single day. Almost everyone at work will only be

relieved," and "P.S. You're welcome Lieutenant, I'm gone. I'm no longer your problem. You win." *Id.* at ¶ 36.

Plaintiff exhausted all administrative remedies with the Equal Employment Opportunity Commission and timely filed this suit. *Id.* at ¶¶ 38—39. In Plaintiff's Amended Complaint, Count I alleges sex discrimination in violation of Title VII against Hinsdale, Counts III and IV allege Section § 1983 Fourteenth Amendment violations against Hinsdale and McCarthy, respectively. Count V alleges intentional infliction of emotional distress (IIED) and Count VI alleges loss of consortium. Count VII is an indemnification claim against Hinsdale. Defendants have moved to dismiss Counts III, V and VI. [9]. Defendants also move under Federal Rule of Civil Procedure 12(f) to strike Plaintiff's requests for back pay, front pay and benefits.[2]

## II. Standard

A motion to dismiss tests the sufficiency of a complaint, not the merits of the case. *Gibson v. City of Chi.,* 910 F.2d 1510, 1520 (7th Cir. 1990). "To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted). *See also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief."). A court deciding a Rule 12(b)(6)

---

[2] Defendants also moved to dismiss Count II, brought under the Illinois Human Rights Act, and to strike Plaintiff's request for attorney's fees in Counts V and VI. Dkt. 9 at 2—5. Plaintiff's amended complaint [19] withdraws Count II and the request for attorney's fees in Counts V and VI. Therefore, those portions of Defendants' motion are denied as moot.

4

motion accepts plaintiff's well-pleaded factual allegations as true and draws all permissible inferences in plaintiff's favor. *Fortres Grand Corp. v. Warner Bros. Entm't Inc.,* 763 F.3d 696, 700 (7th Cir. 2014). A plaintiff need not plead "detailed factual allegations", but "still must provide more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action for her complaint to be considered adequate under Federal Rule of Civil Procedure 8." *Bell v. City of Chi.*, 835 F.3d 736, 738 (7th Cir. 2016) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 679(2009)).

### III. Analysis

#### A. *Monell* Claim against Hinsdale (Count III)

Plaintiff alleges that Hinsdale, through its supervisor McCarthy, abused, harassed, and discriminated against Hladik based on sex in violation of the Equal Protection Clause of the Fourteenth Amendment. Dkt. 19, ¶¶ 71—74. The Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658 (1978), "held for the first time that a municipal government could be a proper defendant under § 1983." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) (citation omitted). To state a § 1983 claim against a municipality, a plaintiff must show that

5

she: "(1) [] suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker with final policy-making authority for the [municipality]; which (3) was the proximate cause of [her] injury." *Ovadal v. City of Madison, Wisconsin*, 416 F.3d 531, 535 (7th Cir. 2005).

Defendants argue that Plaintiff fails to plead facts to support a claim that the alleged constitutional violations occurred because of a written policy or a longstanding custom or practice of the Village, or because of an act of a final policymaker for the Village. Dkt. 9 at 6—7. The Court finds that Plaintiff has sufficiently stated a *Monell* claim. *See White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (explaining that it is well-settled that there is no heightened pleading standard for *Monell* claims).

In response to Defendants' motion, Plaintiff focuses on the *Monell* theory of liability based on a widespread practice or custom.[3] Plaintiff argues that the Complaint's allegations show a pattern of discrimination against women in the Fire Department. The amended complaint alleges that the Village, through McCarthy's actions, "repeatedly abused, harassed, and discriminated against Hladik based on sex in violation of her constitutional rights" through "various unnecessary training requirements, verbal threats, and abusive language on a daily basis." Dkt. 19 at ¶¶ 72—73. Further, the Village maintained a "widespread practice of sexual harassment and discrimination motivated by a discriminatory purpose" that was "so permanent

---

[3] Defendants argue in their reply brief that Plaintiff "waived" a *Monell* final policy-maker theory. Dkt. 25 at 2. While Plaintiff does appear focused on the widespread practice theory, considering the allegations in the amended complaint as a whole, however, the Court declines to find this theory waived at this stage. Defendants are free to make this argument at a later stage in the litigation.

6

and well settled as to constitute a custom or usage with force of law." *Id.* at ¶ 73. Plaintiff explains the history of Hladik's status as the only female firefighter, and third ever female firefighter in the Department. *Id.* at ¶ 20. Plaintiff also alleges that the Village discriminated against Hladik through its municipal policymakers including McCarthy. *Id.* at ¶ 75.

Plaintiff relies on *Bresnahan v. City of Chicago,* No. 18-cv-1880, 2018 WL 4829597 (N.D. Ill. Oct. 4, 2018). There the court denied a motion to dismiss a *Monell* claim, finding plaintiffs "plausibly allege[d] a widespread practice that discriminates against women" in the Chicago Police Department CPD Special Functions Division. *Id.* at *4. Similar to the plaintiffs there, in addition to Plaintiff's allegations about Hladik's own experience, Plaintiff provides information about the lack of female representation in the fire department. Dkt. 20 at ¶ 19. Moreover, a plaintiff "need not identify other examples of a practice in order to state a *Monell* claim but rather may rely solely on [her] own experience." *Garcia v. City of Chicago*, 17 C 3932, 2018 WL 3546742 at *2 (N.D. Ill. July 24, 2018), *relying on White*, 829 F.3d 844; *see also Howell*, 987 F.3d at 655 (noting case examples where allegations of plaintiffs' individual experiences adequately pleaded *Monell* liability). At this pleading stage, Plaintiff's allegations are sufficient to state a *Monell* claim.[4] Therefore, Defendants' motion to dismiss Count III is denied.

### B. Intentional Infliction of Emotional Distress Claim (Count V)

---

[4] In support of their argument, Defendants rely on case law decided on summary judgment which is not persuasive at this pleadings stage. *See e.g. Gonzalez v. Vill. of W. Milwaukee*, 671 F.3d 649 (7th Cir. 2012); *Rasche v. Vill. of Beecher*, 336 F.3d 588 (7th Cir. 2003).

7

Defendants argue that Plaintiff's IIED claim fails to state a claim. Dkt. 9 at 8.

To prevail on a claim for intentional infliction of emotional distress under Illinois law, a plaintiff must prove: "(1) that the defendant's conduct was truly extreme and outrageous, (2) that the defendant either intended that his conduct would cause severe emotional distress or knew that there was a high probability that his conduct would do so, and (3) that the defendant's conduct did in fact cause severe emotional distress." *Herrera v. Di Meo Bros., Inc.*, 529 F. Supp. 3d 819, 830 (N.D. Ill. 2021) (citations omitted). Here, Defendants only take issue with the first element: extreme and outrageous conduct.

Such conduct must be so extreme that it goes "beyond all possible bounds of decency and to be regarded as intolerable in a civilized community." *Herrera,* 529 F. Supp. 3d. at 830. In the employment context, the standard is not met unless an "employer clearly abuses the power it holds over an employee in a manner far more severe than the typical disagreements or job-related stress caused by the average work environment." *Naeem v. McKesson Drug Co.*, 444 F.3d 593, 605 (7th Cir. 2006).

Defendants argue that Plaintiff's conclusory allegations do not state a claim. Dkt. 9 at 8. However, for the purposes of a motion to dismiss, the Court takes Plaintiff's allegations as true. *W. Bend Mut. Ins. Co.*, 844 F.3d at 675. Plaintiff alleges that Hinsdale and McCarthy intended for their conduct to cause severe emotional distress to Hladik. Dkt. 19 ¶¶ 90-91. The claim is based on the Complaint's allegations that McCarthy and Hinsdale harassed, hazed, and discriminated against Hladik. *Id.* at ¶ 88. Defendants rely on *Miller v. Equitable Life Assur. Soc'y*, 537 N.E.

2d 887, 890 (Ill. App. Ct. 1989) to argue that the alleged conduct was not extreme or outrageous. The Court is not persuaded. The *Miller* court held that "personality conflicts, job performance evaluations, or job transfers" do not equate to extreme or outrageous conduct because these are common on every job. *Id.* at 957. The Court finds the allegations in this case more serious, and in any event, *Miller* is a state court case decided under state fact-pleading standards, not the more liberal notice pleading in federal court. *See e.g. Neumann v. Borg-Warner Morse Tec LLC*, 168 F. Supp. 3d 1116, 1121 (N.D. Ill. 2016) ("we require only that the complaint include enough facts so that the right to relief is more than speculative and so that the defendant can prepare a defense.").

By contrast in *Naeem,* 444 F.3d at 593 (although decided on a motion for summary judgment), defendant's actions met the "extreme and outrageous" standard. There, the employer, among other things, made the plaintiff climb an unstable staircase, publicly criticized her in front of other employees, and increased her workload due under Performance Improvement Plans knowing it would lead to her failure.

Plaintiff has pled conduct that could be constitute extreme and outrageous. Plaintiff alleges that Hladik experienced "emotional torment, hostility, hazing, and abuse," imposed unnecessary terms and conditions on her employment specifically calculated to prevent her from passing probation, verbally confronted Hladik in public, and subjected her to humiliating interrogations. (Dkt. 19 at ¶ 27–29. Additionally, McCarthy forced Hladik to perform tasks such as being blindfolded to

operate a firehose, which no male firefighter had to do. Hladik was continuously told she should quit, and without cause, was subjected to a Performance Improvement Plan. *Id.* at ¶¶ 30, 32. This conduct was so pervasive that it caused Hladik to believe she would fail as a firefighter. Before taking her own life, she described being tormented and that Defendants' conduct "destroyed" her. *Id.* at ¶ 35—36.

This harassment was in large part led by McCarthy, the person responsible for determining whether she passed her probationary period to become permanently employed as a firefighter. Dkt. 19 at ¶ 31. The Seventh Circuit and Illinois courts hold that it is appropriate "to consider not only the power and influence wielded by the harassing party, but also the likelihood that the threatened action could be carried out." *Honaker v. Smith*, 256 F.3d 477, 491 (7th Cir. 2001) *relying on Milton v. Illinois Bell Tel. Co.*, 427 N.E.2d 829, 832 (1981) (internal citations omitted). Conduct can be "extreme and outrageous" when there are allegations that an employer clearly abuses his power over an employee in severe manner that goes beyond typical disagreements or job-related stress. *Id.* Thus McCarthy's status as a person with control over Hladik's future employment support a finding that Plaintiff has stated a plausible IIED claim in Count V.

**C. Loss of Consortium Claim (Count VI)**

Defendants argue that Plaintiff's loss of consortium claim must be dismissed because there is no viable cause of action under Illinois law. Dkt. 9 at 10. Defendants further assert that neither Title VII or Section 1983 allow spouses to file consortium claims for derivative losses. *Id.* Plaintiff responds that this claim is derived from the

10

IIED claim. Dkt. 20 at 11. Therefore, this Court only considers whether Plaintiff can bring a loss of consortium claim as a derivative from his IIED claim, since the IIED claim will proceed.

A loss of consortium claim is derivative in nature, so a defendant must be liable for the injuries to the person whose spouse brings the action. *Allender v. Guardian Life Ins. Co. of Am.*, 592 F. Supp. 541, 544 (N.D. Ill. 1984), *aff'd sub nom. Allender v. Guardian Life Ins. Co.*, 789 F.2d 920 (7th Cir. 1986) (denying a loss of consortium claim, but on the basis that the underlying claim was dismissed). Defendants are correct, however, that Section 5(a) of the Illinois Workers' Compensation Act ("IWCA") generally bars a spouse from bringing a loss of consortium claim for the employee's injury. However, Illinois courts have held that the IWCA was not intended to leave plaintiffs with a sole remedy under the IWCA for intentional torts. *See Fitzgerald v. Pratt*, 585 N.E.2d 1222, 1225 (Ill. App. Ct. 1992); *Meerbrey v. Marshall Field & Co.*, 139 Ill.2d 455, 472 (1990) (considering whether a plaintiff that brought an intentional tort claim rather than a negligence claim can do so. The court held that the exclusive remedy provisions of the IWCA do not bar employees from bringing intentional tort claims against employees for injuries). Defendants appear to concede this argument but ask that if the IIED claim survives, that damages be time limited. Dkt. 25 at 8-9. Plaintiff does not respond to that argument.

The Court agrees with Defendants. Because this claim stems from the IIED claim, loss of consortium damages will be limited to the alleged emotional distress period, which ended on July 21, 2020, the date of Hladik's death.

### D. Prayers for Relief

Defendants move to strike Plaintiff's prayers for back pay, front pay and benefits in Counts I, III, and IV because the complaint does not plausibly allege entitlement to such damages. Dkts. 9, 25. A motion to strike is "usually discouraged," *Otero v. Dart*, No. 12 C 3148, 2012 WL 5077727, at *2 (N.D. Ill. Oct. 18, 2012), but it "may be used to remove an excessive or unauthorized claim for damages," *Hrubec v. Nat'l R.R. Passenger Corp.*, 829 F. Supp. 1502, 1507 (N.D. Ill. 1993).

Defendants contend that Plaintiff cannot recover for back pay because there are no allegations that she was not paid her full wages or other economic benefits entitled to her. *Id.* at 12. They assert that front pay should be denied because Title VII cases only allow for front pay where reinstatement is unavailable or inadvisable, and because Hladik was still employed when she died, there is no need for compensation. *Id.* Plaintiff contends that recovery of compensatory damages and other equitable remedies is permitted under Section 1983 and Title VII, and front and back pay is due because Defendants' conduct contributed to and was the primary cause of Hladik's premature death. Dkt. 20 at 14.

The Court denies Defendants' request to strike the prayers for relief as premature at this stage. "A defendant's motion to strike a prayer for relief is premature if such relief is provided for by law." *Jumpfly, Inc. v. Torling*, 10 C 0385, 2010 WL 1978732 at *4 (N.D. Ill. May 17, 2010). Defendants have not moved to dismiss Plaintiff's Title VII claim and Plaintiff currently has a surviving *Monell* claim. Both compensatory damages and equitable relief are available under these

claims. *See* 42 U.S.C. § 1981a(b)(2) (allowing compensatory damages); 42 U.S.C. § 2000e-5(g)(1) (allowing backpay). Defendants acknowledge that "in other cases wherein an employee asserts claims under Title VII and/or §1983, he or she could plead and potentially seek these remedies in litigation." Dkt. 25 at 9.[5] That strikes the Court as the end of the matter – whether or not Plaintiff's particular allegations are sufficient is not appropriate. If appropriate, Defendants may raise this argument later in the litigation. Defendants' motion to strike is denied without prejudice.

## Conclusion

For the stated reasons, Defendants' Motion to Dismiss and to Strike [9] is denied.

E N T E R:

Dated: June 3, 2022

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge

---

[5] Defendants' reliance on *Flowers v. Komatsu Mining Systems, Inc.*, 165 F.3d 554 7th Cir. 1999) and *Shick v. Illinois Dept. of Human Services*, 307 F.3d 605 (7th Cir. 2002) is misplaced. *Shick* was a determination made at trial and did not consider whether front pay, back pay or benefits can be considered "equitable relief" generally, but rather found that the plaintiff in question was not eligible for reasons not applicable to the instant case. *Id.* at 615. *Flowers,* also an appeal of the trial court's award, held that the remedy was available, but not applicable in that specific ADA action.

13